[Cite as *Beasley v. ANG, Inc.*, 2013-Ohio-4882.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James G. Beasley, Director,<br>Ohio Department of Transportation, | : | |
| | : | |
| Plaintiff-Appellee, | : | No. 12AP-1050 |
| v. | : | (C.P.C. No. 07CV-03-3193) |
| ANG, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on November 5, 2013

*Mike DeWine*, Attorney General, *L. Martin Cordero* and *M. J. Nathaniel Fling*, for appellee.

*Vorys, Sater, Seymour and Pease LLP, Joseph R. Miller* and *John M. Kuhl*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, ANG, Inc. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying its objections and adopting a magistrate's decision granting a motion to enforce settlement filed by plaintiff-appellee, Ohio Department of Transportation ("appellee"). Because we conclude that there was no competent, credible evidence to support the magistrate's conclusion that the parties entered into a settlement agreement in July 2007, we reverse.

{¶ 2} This appeal arises from an appropriation proceeding filed by appellee seeking to acquire a parcel of land owned by appellant and a temporary construction easement over a portion of appellant's property. Both before and after the appropriation

action was filed in March 2007, appellee engaged in negotiations with appellant in an attempt to obtain the property through a voluntary purchase. In July 2007, appellant's counsel sent appellee's counsel a copy of a contract for sale and purchase of real property (the "contract for sale"), signed by Rolland E. George, president of appellant. Appellee did not execute the contract for sale, but appellee's counsel prepared a proposed judgment entry on settlement and transmitted it to appellant's counsel. Appellant did not sign the proposed judgment entry, and it was never filed with the court.

{¶ 3} In December 2007, the trial court dismissed the case for failure to prosecute. The court subsequently reinstated the case to the active docket in January 2008, filing a journal entry indicating that the parties had completed a settlement entry. However, no settlement entry was filed with the court. The common pleas court once again dismissed the case for failure to prosecute in May 2009. Following a status conference with the parties, the court again reactivated the case in June 2011.

{¶ 4} In October 2011, appellee filed a motion to enforce a purported settlement, arguing that the parties entered into a settlement agreement in 2007 providing that appellee would pay $4,000 as compensation for the land acquired. The common pleas court referred the motion to a magistrate, who conducted a hearing on the motion. Following the hearing, the magistrate issued a decision granting appellee's motion to enforce the purported settlement. The magistrate concluded that the parties entered into a settlement agreement in July 2007, which provided that appellant would accept $4,000 for the land taken by appellee and any damages to the residue. Appellant filed objections to the magistrate's decision. The common pleas court denied appellant's objections and adopted the magistrate's decision granting appellant's motion to enforce the purported settlement agreement.

{¶ 5} Appellant appeals from the common pleas court's judgment, assigning six errors for this court's review:

> First Assignment of Error:
>
> The court of common pleas erred in holding that Appellant had waived the Statute of Frauds defense by not asserting the defense in Appellant's Answer when ODOT's Petition to Appropriate raised no claims for which the Statute of Frauds would have been an applicable defense.

Second Assignment of Error:

The court of common pleas erred in holding that a purchase contract that by its own terms was merely an offer to sell, was never accepted by ODOT, and expired in July 2007, could form the basis of an enforceable settlement agreement more than four years later.

Third Assignment of Error:

The court of common pleas erred in holding that Appellant and ODOT had a meeting of the minds when Appellant's offer contained material differences from ODOT's proposed judgment entry.

Fourth Assignment of Error:

The court of common pleas erred by disregarding ODOT's judicial admissions that this case remain [sic] "unsettled" years after the purported July 2007 settlement was reached.

Fifth Assignment of Error:

The court of common pleas erred by failing to require ODOT to establish a valid and enforceable settlement by a preponderance of the evidence.

Sixth Assignment of Error:

The court of common pleas abused its discretion by adopting and basing its decision upon factual findings unsupported by and contrary to the evidence.

{¶ 6}  Appellant challenges the common pleas court's adoption of the magistrate's decision granting appellee's motion to enforce a settlement agreement. When objections to a magistrate's decision are filed, as they were in this case, a trial court conducts a de novo review of the magistrate's decision. *McNeilan v. The Ohio State Univ. Med. Ctr.*, 10th Dist. No. 10AP-472, 2011-Ohio-678, ¶ 19. On appeal, we review a trial court's adoption of a magistrate's decision under an abuse-of-discretion standard. *Id.* "When reviewing a trial court's disposition of objections to a magistrate's report, we will not reverse the trial court's decision if it is supported by some competent, credible evidence."

*O'Connor v. O'Connor*, 10th Dist. No. 07AP-248, 2008-Ohio-2276, ¶ 16, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 7} The magistrate concluded that appellant and appellee entered into an enforceable settlement agreement, as manifested by the proposed judgment entry prepared by appellee's counsel. In its third assignment of error, appellant asserts that the court of common pleas erred in adopting the magistrate's conclusion that the parties reached a meeting of the minds regarding the terms of the purported settlement agreement. Under its fifth assignment of error, appellant argues that the court erred by failing to require appellee to demonstrate the existence of an enforceable settlement agreement, including a meeting of the minds, by a preponderance of the evidence. Similarly, in its sixth assignment of error, appellant challenges, inter alia, the magistrate's finding that the parties reached a settlement in July 2007 and that the proposed judgment entry reflected the parties' settlement agreement. Because each of these assignments of error relates to appellant's contention that the parties did not reach a meeting of the minds regarding the terms of any purported settlement agreement, we address them together.

{¶ 8} "The result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and acceptance thereof." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997). A settlement agreement is enforceable if it encompasses the essential elements of the bargain between the parties. *Ruffian, LLC v. Hayes*, 10th Dist. No. 09AP-948, 2011-Ohio-831, ¶ 17. In this case, the magistrate concluded that the material terms of the parties' agreement were that appellee would pay $4,000 for the parcels of land it appropriated. The magistrate held that the parties' meeting of the minds as to these material terms was reflected in the contract for sale executed by George on behalf of appellant and in the proposed judgment entry prepared by appellee's counsel.

{¶ 9} Assuming for purposes of analysis that the material terms of the purported settlement agreement were the price to be paid to appellant and the property to be appropriated by appellee, we conclude that the magistrate erred by concluding that the parties reached a meeting of the minds as to these terms in July 2007. The magistrate held that the terms of the proposed judgment entry reflected the terms of the contract for

sale. Based on this conclusion, the magistrate ruled that both parties agreed to the terms as reflected in the proposed judgment entry. The record reflects that, in July 2007, the parties agreed to a purchase price of $4,000; both the contract for sale and the proposed judgment entry provided for payment of that price. After reviewing the evidence, however, we conclude that the parties did not reach a meeting of the minds as to the extent of the property to be appropriated by appellee.

{¶ 10} In this case, appellee sought to appropriate a fee simple interest in a parcel owned by appellant. The petition to appropriate incorporated an exhibit describing the property as "Parcel 13-WL" (the "13-WL description").  Under the 13-WL description, appellant would be divested of any and all abutter's rights to the property, including access rights in, over and to the property. Both the contract for sale and the proposed judgment entry incorporated by reference the 13-WL description. However, the contract for sale contained a clause further defining appellant's access rights in the property (the "limited access parcel clause"):

> If the property described in Exhibit "A" is designated by Purchaser as a limited access parcel, then Seller further agrees to release to Purchaser, its successors and assigns, any and all abutters' rights, including access rights except and excluding those access points currently located on the existing property and which shall remain after transfer, , [sic] appurtenant to any remaining lands of Seller (from which the property described in Exhibit "A" is being severed) in, over, on, from, and to the property described in Exhibit "A".

(Contract for Sale and Purchase of Real Property, Defendant's Hearing Exhibit A.) Appellant's counsel submitted the signed contract for sale to appellee's counsel on July 23, 2007, and indicated his understanding that appellee's counsel would draft a settlement agreement containing the terms of the contract and forward it to appellant for execution. However, the proposed judgment entry as prepared by appellee's counsel did not include the limited access parcel clause or any similar language further defining appellant's access rights to the property that was to be appropriated by appellee. Instead, the proposed judgment entry simply incorporated by reference the 13-WL description, which was the same as the "Exhibit A" referred to in the contract for sale.

{¶ 11} At the hearing on appellee's motion to enforce the settlement, John Maynard testified on behalf of appellee. Maynard was the District 6 Real Estate Administrator for appellee in 2007 and was directly involved in attempting to negotiate the purchase of the relevant property from appellant. On cross-examination, Maynard acknowledged that under the 13-WL description, appellant would be divested of any and all abutter's rights; whereas, under the terms of the contract for sale, appellant would retain the existing access points located on the property. Nathan Fling, the assistant attorney general who represented appellee in the appropriation proceeding also testified at the hearing. Fling testified that the proposed judgment entry, which he prepared, did not contain the exception related to access rights that was set forth in the contract for sale.

{¶ 12} The evidence and testimony presented at the hearing demonstrated that, in July 2007, appellant offered to sell the relevant property as described in the 13-WL description to appellee for $4,000, with a modification of appellant's access rights to the property as set forth in the limited access parcel clause of the contract for sale. Appellee responded by preparing the proposed judgment entry, which provided that appellee would pay $4,000 for the relevant property as described in the 13-WL description, with no modification of appellant's access rights as defined under the 13-WL description. Therefore, it appears that, as of July 2007, appellant and appellee failed to reach an agreement regarding the access rights to the property that appellant would retain following the transfer of ownership to appellee.

{¶ 13} Contrary to the magistrate's conclusion, the proposed judgment entry did not contain the same terms as the contract for sale. Because neither party accepted the document provided by the opposing party, these two documents are more properly construed as competing offers than as evidence of an enforceable settlement agreement. *See, e.g.*, *Cambodian Buddhist Soc., Inc. v. Ke*, 10th Dist. No. 01AP-731, 2002-Ohio-2766, ¶ 38 ("In the present case, although drafts were exchanged between the parties, including a counter-offer containing terms that varied from an initial offer, the record does not reveal an acceptance or a meeting of the minds on the essential terms of the agreement."). After reviewing the evidence and testimony presented at the hearing, we conclude that there was no competent, credible evidence to support the magistrate's conclusion that the

parties reached a meeting of the minds regarding the sale of the property and settlement of the appropriation case in July 2007.

{¶ 14} Absent a meeting of the minds with respect to what, if any, access rights appellant would retain after the property was transferred to appellee, the parties could not have reached an enforceable settlement agreement. *See, e.g., Ohio Title Corp. v. Pingue*, 10th Dist. No. 10AP-1010, 2012-Ohio-1370, ¶ 50-52 (finding that the trial record demonstrated that the parties failed to reach a meeting of the minds with respect to several essential terms of a purported settlement agreement for purchase of a property, including whether the seller would retain an non-exclusive easement over the property). Due to the lack of competent, credible evidence to support the magistrate's conclusion, the trial court abused its discretion by adopting the magistrate's decision granting the motion to enforce the purported settlement agreement.

{¶ 15} Accordingly, we sustain appellant's third, fifth, and sixth assignments of error.

{¶ 16} Based on our conclusion that there was no enforceable settlement agreement and that the trial court erred by adopting the magistrate's decision granting the motion to enforce, appellant's first, second, and fourth assignments of error, challenging other aspects of the magistrate's decision are rendered moot, and we need not consider them.

{¶ 17} For the foregoing reasons, appellant's third, fifth, and sixth assignments of error are sustained, and its first, second, and fourth assignments of error are moot. We reverse the judgment of the Franklin County Court of Common Pleas, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and cause remanded.*

BROWN and SADLER, JJ., concur.

_____